UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JUAN ANDRES GARCIA DE LA
ROSA,

                Petitioner,

      v.

SECRETARY KRISTI NOEM,
GARRETT J. RIPA,
DEPARTMENT OF HOMELAND
SECURITY (DHS), ATTORNEY
GENERAL PAMELA BONDI,
EOIR, ALLIGATOR ALCATRAZ
WARDEN,

                Respondents.

_____/

Case No. 2:26-cv-565-KCD-DNF

## **ORDER**

Petitioner Juan Andres Garcia De La Rosa is a Cuban national who arrived in the United States in the 1970s. He was later convicted of multiple crimes, ranging from driving with a suspended license (Doc. 10-1 at 14) to domestic battery (*id.* at 13) to sex crimes against a child (*id.* at 16). Garcia de la Rosa is currently facing felony charges for failure to register as a sex offender. *State v. Garcia*, No. 25-CF-018300-A (13th Jud. Cir. Hillsborough Cnty.).[1]

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

On July 28, 1988, Garcia de la Rosa was placed in removal proceedings and ordered removed the next month. (Doc. 10-2 at 1.) After he failed to appeal, the removal order became final. In 2009, Immigration and Customs Enforcement ("ICE") detained Garcia de la Rosa for ninety days. It could not remove him at the time, so ICE released him on an order of supervision.

For decades, Garcia de la Rosa lived in the community under his conditions of release. But then, on October 28, 2025, ICE revoked his supervision and detained him to execute his removal order. (Doc. 10-1 at 2.) ICE cited changed circumstances and a significant likelihood of removal in the foreseeable future, pointing specifically to a new plan to remove him to Mexico. (*See* Doc. 10-4.) This lawsuit seeking a writ of habeas corpus followed. The petition alleges violations of the Fifth Amendment and the Administrative Procedure Act. (*See* Doc. 1.)

The Government meets the petition with two arguments. First, it asserts that the Immigration and Nationality Act ("INA") strips this Court of subject-matter jurisdiction. (Doc. 10 at 4.) Second, on the merits, the Government contends that Garcia de la Rosa's detention is legally sound because it is well within the presumptively reasonable period and ICE complied with its regulatory obligations. (*Id.* at 4-22.)

The Court is satisfied it has jurisdiction. But on the merits, the Government is right. The petition is therefore **DENIED WITHOUT PREJUDICE**.

## I. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## II. Discussion

The Government first claims that two provisions of the INA—8 U.S.C. § 1252(g) and § 1252(b)(9)—strip this Court of jurisdiction. The argument goes like this: Garcia de la Rosa is being detained so he can be removed; therefore, his lawsuit arises from the "execution" of a removal order, and Congress has said district courts cannot touch that.

The Government's reading is too broad. It treats the INA's jurisdiction-stripping provisions like a black hole, sucking in any claim that has even a

tangential relationship to a removal order. But the Supreme Court has told us to read these statutes much more narrowly. *See Jennings v. Rodriguez*, 583 U.S. 281, 292-96 (2018).

First up, § 1252(g) says that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." *Id.* This provision "limits habeas corpus jurisdiction, including under § 2241." *Islas v. DHS/ICE Off. of Chief Couns. - ATD*, No. CV 323-002, 2023 WL 2761710, at *1 (S.D. Ga. Jan. 23, 2023); *see also Wallace v. Sec'y, U.S. Dep't of Homeland Sec.*, 616 F. App'x 958, 961 (11th Cir. 2015).

But § 1252(g) does not cover "all deportation-related claims." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 478 (1999). It has a far narrower reach. It forecloses judicial review of three discrete actions by the Attorney General: her "decision or action to commence proceedings, adjudicate cases, or execute removal orders." *Id.* at 482. As the Supreme Court recently reiterated, § 1252(g) does not "sweep in any claim that can technically be said to arise from the three listed actions." *Jennings*, 583 U.S. at 294. Instead, it "refer[s] to just those three specific actions themselves." *Id.*

Garcia de la Rosa's petition steers clear of those forbidden actions. He is not asking this Court to vacate his removal order or to stop the

4

Government from putting him on a plane. Instead, he is challenging the procedural mechanics of his current detention. His argument is that the Government failed to follow its own rulebook when it revoked his release. Specifically, it skipped the required interview and allowed an unauthorized official to sign the revocation notice. A claim that the Government locked someone up in violation of binding regulations challenges the detention process, not the commencement or execution of a removal order. *See, e.g.*, *Navarro v. Bondi*, No. 8:25-CV-3213-KKM-NHA, 2025 WL 3275944, at *2 (M.D. Fla. Nov. 25, 2025).

The core of this case is not about the Attorney General's decision to detain Garcia de la Rosa. It's about whether the Government followed its own regulations in that process. (*See* Doc. 1.) Such a claim is best understood as independent of, and collateral to, removal because it may be resolved without affecting the Attorney General's prosecutorial discretion that § 1252(g) was meant to preserve. *See Reno*, 525 U.S. at 485 n.9 ("Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion."); *see also Arroyo v. Diaz*, No. 25-62676-CIV, 2026 WL 279656, at *4 (S.D. Fla. Feb. 2, 2026); *Banega v. Noem*, No. 2:25-CV-1152-JES-DNF, 2026 WL 234042, at *2 (M.D. Fla. Jan. 29, 2026).

Next up is the so-called "zipper clause," which "bars review of claims arising from 'action[s]' or 'proceeding[s]' brought to remove an alien.'" *DHS v.*

*Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (quoting 8 U.S.C. § 1252(b)(9)). This discussion can be short. The Eleventh Circuit has held "that the zipper clause only affects cases that involve[] review of an order of removal." *Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257 (11th Cir. 2020). Garcia de la Rosa is not challenging a removal order. So "the Government's reliance on § 1252(b)(9) is misplaced." *Fernandez-Garcia v. U.S. Att'y Gen.*, No. 1-20-CV-23599-UU, 2021 WL 8821923, at *5 (S.D. Fla. Apr. 15, 2021).

With the jurisdictional underbrush cleared away, the Court can turn to the merits. Garcia de la Rosa's claims are addressed below.

### A. Substantive Due Process

Invoking the Fifth Amendment, Garcia de la Rosa first claims that his continued detention serves no legitimate, non-punitive immigration purpose. And locking a person up indefinitely without a valid plan for removal, like here, is exactly the kind of arbitrary deprivation of liberty that the Constitution forbids. (Doc. 1 at 5-8.)

The Fifth Amendment protects noncitizens during deportation proceedings. At the same time, however, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). "[T]he through line of history is recognition of the Government's sovereign authority to set the terms

governing the admission and exclusion of noncitizens." *Dep't of State v. Munoz*, 602 U.S. 899, 911-12 (2024). "In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976).

Because immigration detention is a civil tool rather than a criminal penalty, the constitutional line is generally drawn at punishment. *See Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981). By contrast, the Government can lawfully hold a noncitizen to ensure they are present for removal or to keep the public safe. That is simply the machinery of the immigration system doing its job. A substantive due process violation happens only when that machinery breaks down—when the detention loses its reasonable connection to effectuating a removal order and morphs into a penalty. *Cf. Lee v. Stone*, No. 2:11-CV-00014-RWS, 2011 WL 4553147, at *7 (N.D. Ga. Aug. 25, 2011). So long as the custody serves a legitimate immigration purpose rather than acting as a punitive measure, it stays on the right side of the Constitution. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 747 (1987); *Rodriguez v. Perry*, 747 F. Supp. 3d 911, 917 (E.D. Va. 2024) ("[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings.").

Garcia de la Rosa cannot show that his current stint in custody is a punishment masquerading as immigration processing or is otherwise arbitrary. He is subject to a final removal order that stands uncontested. The INA explicitly authorizes a return to detention to effectuate such orders. Under the rules, ICE may revoke a noncitizen's release to effectuate removal. 8 C.F.R. § 241.13(i)(2). And the government no doubt has a legitimate interest in doing exactly that—enforcing its laws, ensuring individuals do not flee, and protecting the public. *See Malam v. Adducci*, 469 F. Supp. 3d 767, 790 (E.D. Mich. 2020). Here, the Government revoked Garcia de la Rosa's release specifically to enforce his outstanding removal order. Returning him to custody thus serves a recognized, legitimate government objective.

Nor are we anywhere near the constitutional danger zone. ICE detained Garcia de la Rosa on October 28, 2025. He has been in custody for nearly five months. That is a far cry from the indefinite, limbo-like detention that the Supreme Court has rejected under the Fifth Amendment. *See Zadvydas v. Davis*, 533 U.S. 678 (2001). Instead, it falls well within the six-month window the *Zadvydas* Court deemed presumptively reasonable to carry out a deportation. *Id.* at 701 (holding that executive agencies may not hold noncitizens longer than six months when removal is not foreseeable and stating, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably

foreseeable future, the Government must respond with evidence sufficient to rebut that showing").

Garcia de la Rosa claims that his removal is not likely in the foreseeable future. (Doc. 1 ¶ 6.) But this argument puts the cart before the horse. Until the six-month *Zadvydas* period concludes, detention is presumptively reasonable, and any due process claim is not ripe. *See, e.g., Grigorian v. Bondi*, Case No. 25-CV-22914-RAR, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025); *Lopez v. Dir. of Enf't and Removal Operations*, Case No. 3:25-cv-1313-JEP-SJH, 2026 WL 261938, at *12 (M.D. Fla. Jan. 26, 2026); *Guerra-Castro v. Parra*, Case No. 25-cv-22487-GAYLES, 2025 WL 1984300 at *4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months").

Apparently recognizing this temporal hurdle, Garcia de la Rosa attempts a workaround. He argues that the six-month reasonable detention period is cumulative, starting when his supervision began. (Doc. 1 ¶ 24.) Garcia de la Rosa was released from mandatory detention back in the early 2000s, which means the six-month period has long since passed. (*Id.* ¶ 35.)

This argument makes little sense. *Zadvydas* was aimed at the severe, physical deprivation of liberty that comes from sitting in a jail cell indefinitely. The Court "used the words 'detain' and 'custody' to refer exclusively to physical confinement and restraint." *Jennings*, 583 U.S. at 311.

9

Against that backdrop, it is illogical to run a clock designed to prevent indefinite imprisonment while a person is out living freely in the community. "Because *Zadvydas* clearly involved *detention* of a petitioner during the presumptively reasonable period, it defies common sense to suggest that *Zadvydas* time can run while a petitioner is not in custody." *Cheng Ke Chen v. Holder*, 783 F. Supp. 2d 1183, 1192 (N.D. Ala. 2011). The six-month clock measures actual lockup, not supervised freedom. *See Akinwale*, 287 F.3d at 1052 ("[I]n order to state a claim under *Zadvydas* the alien ... must show post-removal order *detention* in excess of six months [and] also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." (emphasis added).)

As the Supreme Court has long recognized, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. So the executive branch gets a presumptively reasonable six-month runway to do its job, negotiate with foreign governments, and execute a final removal order. *Zadvydas*, 533 U.S. at 701. Because Garcia de la Rosa remains inside that window, his current custody does not cross the line into the kind of indefinite, arbitrary lockup the Fifth Amendment forbids. Until that clock actually runs out, the Government retains the statutory authority to hold him while it works to put him on a plane.

## B. Procedural Due Process

Garcia de la Rosa turns next to the procedural mechanics of his re-detention. He claims that ICE's decision to revoke his supervision violated the Fifth Amendment's guarantee of procedural due process. As Garcia de la Rosa tells it, the agency threw him back behind bars after decades of supervised freedom without fair warning or a chance to defend his liberty. The Constitution, he says, requires more. (*See* Doc. 1 ¶ 46.)

The Court cannot agree. To understand why, start with the baseline reality of Garcia de la Rosa's legal status. He is a noncitizen subject to a final, unexecuted order of removal following multiple felonies. His release on supervision was a matter of administrative grace born of logistical necessity, not a permanent constitutional entitlement. When the Government determines that circumstances have changed and it is finally time to carry out its removal order, the Constitution does not demand a full-dress, pre-deprivation trial. Due process, as the Supreme Court has often reminded us, is flexible. It "calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

In the context of revoking a noncitizen's supervised release, ICE's regulations strike that constitutional balance by guaranteeing written notice and an informal interview that allows the individual to respond. *See* 8 C.F.R. §§ 241.4(l)(1), 241.13(i). These guardrails are undoubtedly sufficient

11

considering the interests at play. And Garcia de la Rosa offers no authority to the contrary. *See Valdes-Santovenia v. Ripa*, No. 2:25-CV-01063-JES-DNF, 2025 WL 3771264, at \*3 (M.D. Fla. Dec. 31, 2025); *cf. Daniels v. Tampa Police Dep't*, No. 8:25-CV-01529-WFJ-AEP, 2025 WL 2959658, at \*3 (M.D. Fla. Oct. 20, 2025) ("[P]rocedural due process guarantees fair procedure and requires notice and an opportunity to be heard before any governmental deprivation of a [constitutionally-protected] interest.").

According to the unrebutted record here, ICE provided Garcia de la Rosa with notice of the revocation and an informal interview on March 19, 2026. (*See* Docs. 10-3, 10-4, 10-5.) Garcia de la Rosa seemingly quibbles with who issued the revocation notice, stating that "authority is limited to the Executive Associate Commissioner of ICE, or when referral to that official is impracticable, a district director of ICE." (Doc. 1 ¶ 45, citing 8 C.F.R. § 241.4(c)(2).) He insists this technicality voids the entire revocation. *See* 8 C.F.R. § 241.4(l)(2); *cf. Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 160 (W.D.N.Y. 2025) ("[U]nder § 241.4(l)(2), the officials with the power to revoke release after making certain findings include field office directors and any other officials delegated the function or authority ... for a particular geographic district, region, or area.").

But there is a fundamental problem with this point: Garcia de la Rosa is reading the wrong regulation. He was originally released back in 2009

12

because there was no significant likelihood of removal in the reasonably foreseeable future to Cuba. That puts his case on a different regulatory track, one governed by 8 C.F.R. § 241.13. When the Government decides it is time to again detain someone on that specific track, it must follow the revocation procedures from § 241.13. *See Choy v. Woosley*, No. 4:25-CV-197-DJH, 2026 WL 324601, at *3 (W.D. Ky. Feb. 6, 2026). The Government acknowledges that § 241.13 applies in the Notice of Revocation. (Doc. 10 at 15; Doc. 10-4.)

Here is the catch: unlike its counterpart, § 241.13 contains no rigid signature requirement limiting revocation authority to field office directors or other specific high-ranking officials. It simply says the agency can revoke an order of supervision if changed circumstances mean removal is now significantly likely. Garcia de la Rosa is trying to borrow a procedural hurdle from a completely different regulation and wedge it into his case. But a petitioner cannot mix and match regulatory provisions to manufacture a claim. *Cf. Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008) ("It is the petitioner's burden to establish his right to habeas relief and he must prove all facts necessary to show a constitutional violation.").

In the end, Garcia de la Rosa has failed to show that the notice and interview he received deviated from the rulebook. The Government gave him the why and the when, which is all § 241.13(i) requires. True, the notice and interview were provided months after his detention, and even after this

13

habeas case was filed, but that still would not unlock his cell door. The writ of habeas corpus is a profound remedy, not a penalty for bureaucratic delay. *Munaf*, 553 U.S. at 693 ("The habeas statute provides only that a writ of habeas corpus 'may be granted,' and directs federal courts to 'dispose of [habeas petitions] as law and justice require.'"). Even if the agency's initial administrative process was somehow lacking, Garcia de la Rosa can hardly complain that he is being denied a meaningful opportunity to be heard *now*. Through this very habeas proceeding, he has had a full chance to review the Government's evidence, file his briefs, and press his legal arguments before an Article III court. He has had his say. "Because habeas is not backward-looking, the process provided now renders forward-looking relief separately inappropriate." *Ladak v. Noem*, No. 1:25-CV-194-H, 2025 WL 3764016, at *5 (N.D. Tex. Dec. 30, 2025).

## C. Administrative Procedure Act

Repackaging the same arguments from above, Garcia de la Rosa invokes the Administrative Procedure Act ("APA"). (Doc. 1 at 8-12.) The difficulty here is twofold. First, Garcia de la Rosa has brought these claims in a habeas petition, which is the wrong vehicle for the job. The writ of habeas corpus exists to challenge the fact or duration of physical confinement. It is not a catch-all funnel for standard administrative grievances. Trying to shoehorn a freestanding APA challenge into a habeas petition simply does

14

not work. *See Fleurimond v. Noem*, No. CV-26-00037-PHX-MTL (CDB), 2026 WL 507542, at *3 (D. Ariz. Feb. 24, 2026). A habeas petition comes with a streamlined procedure, fast-tracked rules, and a nominal filing fee. An APA challenge, by contrast, is a standard civil action with a heftier filing fee and following the ordinary, more deliberate pace of the Federal Rules of Civil Procedure. Litigants cannot sidestep those standard requirements by simply slapping a habeas label on an administrative complaint. *See Alvarez v. Noem*, No. 5:26-CV-0013-JKP, 2026 WL 93972, at *7 (W.D. Tex. Jan. 9, 2026); *Richmond v. Scibana*, 387 F.3d 602, 606 (7th Cir. 2004) (recognizing legal distinction between habeas cases and civil actions brought under APA, which have different filing fees and exhaustion provisions).

Second, the APA itself leaves no room for these claims. The APA operates as a fallback option, providing a right of judicial review only when "there is no other adequate remedy in a court." 5 U.S.C. § 704. But Garcia de la Rosa has an adequate remedy—the very habeas petition he filed to get through the courthouse doors. *See Trump v. J.G.G.*, 604 U.S. 670, 674 (2025) (Kavanaugh, J., concurring). Because the writ of habeas corpus provides a fully adequate avenue to test the legality of his custody—which is the only thing Garcia de la Rosa is challenging here—the APA simply leaves no room for these redundant claims. *See Fleurimond*, 2026 WL 507542, at *3; *Rivera*

15

*v. Noem*, No. 1:25-CV-01289 KWR-KBM, 2026 WL 381309, at \*7 (D.N.M. Feb. 11, 2026).

## IV. Conclusion

Garcia de la Rosa has not been detained long enough to transform his authorized custody into a due process violation under *Zadvydas*. And his remaining arguments—whether grounded in administrative technicalities or anything else—simply do not warrant the extraordinary remedy of habeas relief. The Government is actively working to execute his removal, and it has cleared the necessary regulatory hurdles to keep him in custody while it does so. Because Garcia de la Rosa's current detention remains lawful, his petition (Doc. 1) must be **DENIED WITHOUT PREJUDICE**. The Clerk is **DIRECTED** to enter judgment accordingly, terminate any pending motions, and close the case.

**ORDERED** in Fort Myers, Florida on March 30, 2026.

Kyle C. Dudek
United States District Judge

16